UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-11067-RWZ


RONITA BROOKINS

v.

STAPLES CONTRACT & COMMERCIAL, INC.


<u>MEMORANDUM OF DECISION</u>

February 12, 2013


ZOBEL, D.J.

Plaintiff Ronita Brookins ("Brookins") has sued her former employer, Staples

Contract & Commercial, Inc. ("Staples"), for firing her after she took several days off

work to go to medical appointments. She claims her absences were protected by the

Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 <u>et</u> <u>seq.</u> Staples

moves for summary judgment.

## I.    Background[1]

Brookins began working for Staples in July 2004. She was employed as an

operations resolution representative, also known as a fraud representative. In that

position, she reviewed customer orders to check for credit card fraud.

Also in 2004, Brookins was diagnosed with cancer in her left breast. The tumor

---

[1] Staples has moved to strike Brookins' statement of facts for failure to comply with Local Rule
56.1. That motion (Docket # 20) lacks merit and is denied.

was surgically removed, but the cancer recurred in 2006 and required further treatment. After both the initial diagnosis and the recurrence, Brookins took medical leave from her work at Staples. She returned to Staples after each absence without further incident.

Around June 2009, Brookins learned that her breast cancer had returned again. On July 27 of that year, her surgeon Dr. Merrell informed her that he believed the cancer had spread to both breasts, and he recommended bilateral mastectomies and reconstructive surgery. He also referred her to an oncologist.

On July 29, two days later, Brookins had a meeting with two Staples staff members: her supervisor, Judson Duncan, and a human resources officer, Carolyn Latimer. The meeting was to discuss Brookins' attendance at work generally, and in particular four days in the previous month that Staples regarded as unexcused absences.[2] Duncan and Latimer informed Brookins that she would be terminated if she had any further unexcused absences, and provided her with a written final warning.[3]

At that meeting, Brookins informed Duncan and Latimer for the first time that her breast cancer had recurred, and that she would probably need further absences for medical treatment. Latimer suggested that Brookins should apply for FMLA leave so

---

[2] One of those absences was for Brookins' medical appointment on July 27. That is the only medical reason Brookins has cited for those absences.

[3] The written Staples attendance policy called for a progressive discipline system, with a verbal warning after the first unexcused absence, a written warning after the second, a written final warning after the third, and termination after the fourth. Brookins objected to the written final warning on the ground that she had not received any previous verbal or written warning. However, the Staples policy also provides that the discipline can be "escalated" if the absences follow a pattern; in this case, the written final warning following the July 29 meeting indicated that Brookins' absences had followed a pattern because three of her four unexcused absences occurred on Mondays.

that Staples would treat future medical absences as excused. Latimer told Brookins

that she would begin processing the paperwork for Brookins' FMLA leave, and that

Brookins would have to submit a certificate of health care provider ("CHCP") within

fifteen days confirming her medical condition and her need for leave. Brookins replied

that it would be difficult for her to submit the CHCP in fifteen days because she was "in

between doctors." Docket # 17, Ex. A (Brookins Dep.) at 160.[4] Duncan told her that as

long as she brought in a doctor's note for each absence, he would treat those

absences as excused. Brookins understood, however, that she was still required to

submit a CHCP within fifteen days.

On July 31 and August 1, Brookins received notices from Staples that her FMLA

leave had been tentatively approved, subject to her submitting a CHCP within fifteen

days. The later notice specified that Brookins had to submit her CHCP by August 16,

and underlined the following warning: "Staples will deny your leave request unless you

return the [CHCP] by the above date." Docket # 15, Ex. T.

Brookins called her surgeon, Dr. Merrell, and asked him to fill out a CHCP for

her. Dr. Merrell refused, telling her he would not fill out the form because he was not

the attending physician; he told her she should instead have it filled out by Dr. Smith, a

surgeon to whom he had previously referred her. Brookins then called Dr. Smith's

office, where a secretary informed her that Dr. Smith could not fill out a CHCP form for

her until she had an appointment with Dr. Smith. Dr. Smith then called her back and

told her she wanted to have all of Brookins' medical records before she made an

---

[4] During her earlier requests for medical leave, Brookins had been told by certain doctors that only her attending physician could fill out a CHCP.

appointment.[5]

Over the next few weeks, Brookins was absent from work on four other occasions for medical appointments, missing three full days and one partial day of work. The doctors she saw included her primary care provider, Dr. Chen; an oncologist, Dr. O'Shea; and her OB-GYN, Dr. Bethoney. Brookins did not seek a CHCP from any of these physicians. After each appointment, Brookins submitted a doctor's note to Duncan or another supervisor.[6]

On August 18, Brookins called human resources administrator Linda Brouillard at Staples and asked for an extension of time to submit the CHCP. Brouillard told Brookins her request would be noted and that Brookins would receive something in the mail. Around August 25, Brookins received a letter from Staples stating that her request for FMLA leave was denied for failure to submit a CHCP. Two or three days later, she called Latimer, who said that she would look into the denial and get back to her.[7]

Brookins did not hear from Latimer again until September 14. On that day,

---

[5] Staples disputes Brookins' testimony that she asked Dr. Merrell and Dr. Smith to fill out her CHCP. It notes Dr. Merrell does not recall Brookins asking him to fill out a CHCP, and does not recall or have any record of referring Brookins to Dr. Smith in 2009. Likewise, Dr. Smith does not recall and has no record of Brookins ever requesting a CHCP from her, and testified she had no contact with Brookins herself before 2010. Dr. Smith also testified that her office routinely completed CHCPs for any patient who asked, without requiring specific medical records.

[6] Staples disputes that Brookins actually submitted any doctor's notes. Brookins testifies that she handed two of the four doctor's notes to Duncan personally, placed the third on Duncan's desk at his instructions, and handed the fourth to another Staples supervisor named Jack Sterling when Sterling asked for it. Duncan testifies he never received any doctor's notes from Brookins. Brookins produced two doctor's notes in discovery, which Duncan testified he did not recognize. Staples also notes that one of the appointments with Dr. Chen was for an ear infection unrelated to Brookins' breast cancer.

[7] Three of the absences described above took place before Brookins received this denial letter; the fourth took place about a week after.

Brookins met with Duncan and Latimer at work, where they informed her that she was being terminated because of her absences.

## II.    Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id at 248.

## III.    Analysis

Brookins seeks relief in four counts: (1) interference with rights protected by the FMLA, violating 29 U.S.C. § 2615(a)(1); (2) retaliation in violation of the FMLA, violating 29 U.S.C. § 2615(a)(2); (3) refusing to provide a reasonable accommodation, or an interactive process to consider such accommodation, in violation of Mass. Gen. Laws ch. 151B; and (4) discrimination on the basis of perceived handicap, also in violation of Mass. Gen. Laws ch. 151B. I discuss each count in turn.

### A. FMLA Interference

To succeed on her interference claim, Brookins must prove that Staples denied her a substantive right guaranteed by the FMLA. See Colburn v. Parker Hannifin/ Nichols Portland Div., 429 F.3d 325, 331 (1st Cir. 2005). Staples argues that Brookins was not entitled to FMLA leave because she never submitted a CHCP.

The Department of Labor has issued detailed regulations implementing the

FMLA's requirements. See generally 29 U.S.C. § 2654 (giving the Secretary of Labor authority to issue implementing regulations). Pursuant to these regulations, "[a]n employer may require that an employee's leave . . . be supported by a certification issued by the health care provider of the employee . . . ." 29 C.F.R § 825.305(a). That provision permits Staples to require that Brookins submit a CHCP in order to take FMLA leave. Furthermore, "[t]he employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." 29 C.F.R. § 825.305(b). If the employee does not provide the certification in a timely manner, the employer may deny FMLA coverage until the certification is provided. 29 C.F.R § 825.313(a)-(b). "If the employee never produces the certification, the leave is not FMLA leave." 29 C.F.R. § 825.313(b).[8]

Brookins concedes that she did not submit a CHCP to Staples within 15 days after Staples requested it, and indeed never submitted any CHCP to Staples. As such, Brookins clearly failed to comply with the general rule of 29 C.F.R. § 825.305(b) that "[t]he employee must provide the requested certification to the employer within 15 calendar days after the employer's request." However, Brookins argues that she is saved by the stated exceptions to that rule, both because it was not practicable for her

---

[8] The regulations distinguish between "foreseeable leave," covered by 29 C. F.R. § 825.313(a), and "unforeseeable leave," covered by 29 C.F.R. § 825.313(b). In either case, however, the employer is entitled to deny FMLA coverage if the employee does not provide any CHCP. The parties therefore do not dispute, and I need not decide, whether Brookins' absences were foreseeable or unforeseeable leave.

6

to obtain a CHCP within 15 days and because Staples provides more than 15 days in which to return a CHCP.

### 1. Practicability

An employee is not required to return a CHCP within 15 days from the employer's request if "it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). This language "[i]n effect . . . authorizes a defense of equitable tolling." Townsend-Taylor v. Ameritech Servs., 523 F.3d 815, 816 (7th Cir. 2008). Brookins argues that it was not practicable for her to return the CHCP, despite diligent, good faith efforts, because all of her doctors either refused to fill out the CHCP or lacked the necessary information.

Brookins' argument is belied by the record. Even accepting all of Brookins' evidence as true, she made a total of two telephone calls seeking a CHCP: one to Dr. Merrell, and one to Dr. Smith. After being refused by both, she made no further efforts to obtain a CHCP. She did not call Dr. Merrell or Dr. Smith again to explain that she needed a CHCP from one of them and that both had refused. She did not ask Dr. Chen, Dr. O'Shea, or Dr. Bethoney for a CHCP—despite visiting each one in person between July 29 and September 14.[9] She did not mail the CHCP form to any of her doctors, or deliver it in person to any of her doctors' offices. Finally, she did not contact Staples to explain her difficulties and request an extension until after the fifteen-day deadline had

---

[9] Brookins explains that she had asked Dr. Chen for CHCPs regarding her breast cancer in the past, and Dr. Chen had been unable to complete them because she could not speak to the cancer treatment Brookins would need. As for Dr. O'Shea and Dr. Bethoney, Brookins asserts they would have been similarly unable to complete a CHCP for her. This argument would have more force if Brookins had at least asked any of these doctors for a CHCP when she saw them. Her mere assumption that they would be unable or unwilling to fill out a CHCP, even if correct, does not show that she made any diligent efforts to obtain that form.

expired. Cf. Young v. Russell Corp., Civil Action No. 2:08CV148-WHA, 2008 WL

5412782, at *4 (M.D. Ala. Dec. 29, 2008).  These are not the diligent efforts that

equitable tolling normally requires, cf. Townsend-Taylor, 523 F.3d at 816, and they

cannot show that it was impracticable for Brookins to timely provide a CHCP here.

 This case differs sharply from the cases cited by Brookins in which courts have

found a showing of impracticability. For instance, in Peter v. Lincoln Tech Inst., 255 F.

Supp. 2d 417 (E.D. Pa. 2002), the employee's doctor told the employee he would sign

her CHCP and mail it that day; the employee contacted the doctor's office "at least

three times and possibly as often as twice each week" over the next twenty-five days,

and the employee was assured each time that the CHCP would be mailed by the end of

the week. Id. at 425, 441-43. Brookins, by contrast, never relied on any doctor to

complete and mail the CHCP, nor did she follow up with any doctor. Brookins' doctors

were not on vacation during the relevant period, cf. Uema v. Nippon Express Haw., 26

F. Supp. 2d 1241, 1248 (D. Haw. 1998), nor did she need a CHCP sent from a foreign

country, cf. Toro v. Mastex Indus., 32 F. Supp. 2d 25, 30-31 (D. Mass. 1999). Finally,

Brookins was not terminated before the required fifteen-day period expired. Cf.

Chenoweth v. Wal-Mart Stores, Inc., 159 F. Supp. 2d 1032, 1038 (S.D. Ohio 2001).

 Brookins' broadest argument is apparently that no doctor could complete a

CHCP for her, because no doctor at the time knew exactly what treatment she would

require. But the record reflects that Brookins had encountered no such difficulty with

her past CHCPs for cancer treatment. As noted above, Brookins had twice taken

medical leave for breast cancer treatment; on each occasion, she had submitted

CHCPs that Staples accepted. Her second such CHCP, in 2006, was signed by Dr. Merrell. It noted that he had referred Brookins to an oncologist, and in the space for a description of necessary treatments it stated "Need to get this info from Dr. Philip Lowry." Docket # 17 at 13. So far as the record shows, such a CHCP would have been sufficient again. On these facts, a reasonable jury could not conclude that Brookins made diligent efforts to obtain a CHCP but found it impracticable.

### 2. Staples' Policy

Brookins next argues that Staples did not require her to return her CHCP within fifteen days. Under the regulation, an employee is not required to return the CHCP within fifteen days if the employer provides more time. 29 C.F.R. § 825.305(b). For instance, if the employer states that the employee must return the CHCP within twenty days, the employee is entitled to those twenty days (not just fifteen).

Staples' written leave of absence policy states that employees must submit their CHCPs within fifteen days after requesting leave, and that "[f]ailure to do so will result in a delay or denial of the [employee's] leave." Docket # 17 at 4. Staples normally waits an additional seven days after that deadline expires before sending a letter denying leave. If the employee contacts Staples after receiving the denial letter, then Staples generally allows the employee another five days to submit a CHCP. Even after that, Staples retains discretion to supersede a denial of leave if the employee eventually submits an appropriate CHCP. One Staples human resource officer testified in her deposition that she had always superseded the denial of leave when she eventually received a satisfactory CHCP.

Because Staples does not rigidly enforce a mandatory fifteen-day deadline, Brookins claims that Staples "provides more than 15 calendar days" under 29 C.F.R. § 825.305(b). Indeed, she claims Staples provides an arbitrarily long time. She argues that because Staples may be willing to accept a CHCP at any time after the fifteen-day deadline, she is legally entitled to return her CHCP whenever she wants. That proposition is not tenable. See Baldwin-Love v. Elec. Data Sys. Corp., 307 F.Supp.2d 1222, 1233-34 (M.D. Ala. 2004) (employee who submitted incomplete CHCP after employer provided multiple extensions was not entitled to another extension to correct errors); Young, 2008 WL 5412782, at *4. Staples' written policy clearly declares that leave may be denied if the CHCP is not returned within fifteen days, and Staples has the right under 29 C.F.R. § 825.305(b) to enforce that rule. Brookins admits she understood that she was required to return the CHCP within fifteen days. She cannot now claim that she was legally entitled to submit her CHCP late just because Staples retained discretion to accept her CHCP late.[10]

Because Brookins failed to submit her CHCP within fifteen days, and because neither exception to the fifteen-day rule applies, her absences after July 29 do not qualify as FMLA-protected leave. Staples is therefore entitled to summary judgment on Brookins' FMLA interference claim.

### B. FMLA Retaliation

Brookins' second claim is that Staples retaliated against her by firing her for seeking FMLA leave. To make out a prima facie retaliation claim, a plaintiff must show

---

[10] In any case, Brookins never submitted her CHCP at all. "If the employee never produces the certification, the leave is not FMLA leave." 29 C.F.R. § 825.313(b).

that (1) she availed herself of a right protected under the FMLA; (2) she was adversely affected by an employment decision, and (3) there was a causal connection between the protected activity and the adverse employment action. <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F.3d 151, 161 (1st Cir. 1998). The burden then shifts to the defendant to articulate a legitimate reason for the employment action; if the defendant does so, the burden shifts back to the plaintiff to show that legitimate reason was a pretext for retaliation. <u>Id.</u> at 160-61.

Brookins clearly makes out the first and second elements of her prima facie case: she sought FMLA leave, and was fired.[11] She argues that the third element, causation, can be inferred from temporal proximity (she was fired shortly after she sought FMLA leave), from her supervisor's alleged motive for retaliation, and from the apparent confusion over who made the final decision to terminate her. Staples responds that it had a legitimate reason for terminating Brookins: Brookins' absences, which as discussed above were not protected by FMLA. <u>See</u> <u>Hodgens</u>, 144 F.3d at 172 (absences not protected by FMLA are legitimate reason for termination). Brookins then argues that her evidence shows Staples' asserted reason was pretextual.

Even assuming Brookins has produced enough evidence to make a prima facie case, she fails to show pretext. As Staples has asserted a legitimate reason for the dismissal, Brookins bears the burden of showing Staples' asserted reason was a

---

[11] Staples argues that Brookins fails the first element because Brookins never submitted her CHCP and so was never entitled to FMLA leave. But "[r]equesting leave is also an FMLA-protected right, for which retaliation conceivably could be wrongful even where the leave itself was unprotected." <u>Tayag v. Lahey Clinic Hosp.</u>, 632 F.3d 788, 793 (1st Cir. 2011) (citations omitted).
Staples then argues that Brookins never "requested" leave, because Latimer preemptively offered it. The distinction is irrelevant. Brookins availed herself of a right protected by the FMLA in pursuing FMLA leave, regardless of who suggested it first.

pretext. That is, she must produce evidence from which a reasonable jury could conclude that Staples actually fired her for seeking FMLA leave, rather than for being absent. Her evidence must be considered as a whole to determine whether it collectively raises a genuine issue of material fact. See Hodgens, 144 F.3d at 170.

To meet her burden, Brookins first observes that she was fired shortly after requesting FMLA leave. Temporal proximity may suggest retaliation, but it is hardly conclusive. See id. at 170-71. And as Brookins was also fired shortly after being absent, the argument weighs as strongly for Staples' asserted legitimate reason as it does for pretext.

Second, Brookins argues that her supervisor Duncan had "powerful motives" to retaliate against her for requesting FMLA leave, because if she was out on FMLA leave, he would have to run the team short-handed. Brookins also notes that Duncan's annual performance reviews depended on his team's profits and productivity, which would be harder to maintain if he had a team member out on FMLA leave. Of course, Duncan faced similar challenges from Brookins' unexcused absences, supporting Staples' legitimate reason for terminating her. Moreover, if a plaintiff could show pretext just by showing her FMLA leave caused managerial problems, summary judgment could almost never enter on FMLA retaliation claims. Nearly every supervisor receiving a FMLA leave request will face managerial challenges like those Duncan faced. In any case, the undisputed evidence shows that Duncan has had two other associates take FMLA leave without negative consequences. That evidence strongly indicates Duncan was able to cope with the logistical difficulties of having team members on FMLA leave.

And Brookins does not claim that Staples generally retaliates against employees who request FMLA leave; indeed, she had twice before taken medical leave from Staples without adverse consequences.

Third, Brookins argues that there are weaknesses or inconsistencies in Staples' account of her termination that can support a finding of pretext. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000). She points in particular to what she calls the "collective amnesia" at Staples over who made the decision to terminate her. Her supervisor Duncan said that a "group decision" was made to terminate Brookins, by a group including himself, his supervisor Richard Mack, and Latimer; but he did not recall what opinions (if any) Latimer or Mack expressed. Duncan also recalled a conference call between himself, Mack, and Latimer about whether to terminate Brookins, but could not recall why that call was initiated, if they reached a decision during that phone call, or what other discussions there were.[12] Latimer also does not recall her discussions with Duncan about Brookins. This confusion perhaps casts some doubt on Latimer's and Duncan's credibility, but it does not directly show that Staples' stated reason for the termination was pretextual. And Brookins' situation is clearly distinguishable from the cases she cites for support; in the cases she cites, the employee's supervisors directly contradicted each other about who made the final termination decision, and there was substantial other evidence of

---

[12] Brookins also points to an email from Duncan to Latimer in which Duncan indicates he is "tired of issuing warnings" and "want[s] to work with professionals." Docket # 17, Ex. B-1. Brookins claims this email shows Duncan wanted Brookins fired. The email was sent before Brookins requested FMLA leave, and so cannot show Duncan bore any FMLA-related retaliatory motive. Moreover, read in context, the email indicates only that Duncan wanted their meeting with Brookins be short.

pretext.  Cf. Christensen v. Titan Distrib., 481 F.3d 1085, 1095 (8th Cir. 2007);

Sabbrese v. Lowe's Home Ctrs., 320 F. Supp. 2d 311, 324-26 (W.D. Pa. 2004).


Fourth, Brookins observes that Duncan denies ever receiving any doctor's notes

from her, while she insists she handed two to him and placed a third on his desk

according to his instructions. She argues that this dispute is further evidence of pretext,

because a jury could conclude Duncan was lying, thereby evincing his retaliatory

animus against her. But the inferential leap there is an exceedingly long one. Even

assuming that the jury believes Brookins' story completely, it would be almost pure

speculation for them to conclude as a result that Duncan was now perjuring himself

because of a latent desire to retaliate against Brookins for her FMLA leave request.[13]

Given the circumstances of this case, Brookins' evidence simply would not allow

a rational jury to conclude that she was really fired for requesting FMLA leave rather

than for her unexcused absences. First, it is undisputed that Staples itself—through

Latimer—was the first to recommend that Brookins apply for FMLA leave. As soon as

Brookins informed Duncan and Latimer that she was facing medical problems, Latimer

volunteered to start the FMLA approval process. Staples' obvious willingness to

provide Brookins with FMLA leave is hard to reconcile with the asserted retaliation.

Furthermore, Brookins experienced no adverse consequences at all on the two

---

[13] Brookins notes two other minor points: that Latimer failed to get back to her after promising she would look into the FMLA leave denial letter, and that Staples could have accepted a late CHCP and reversed the denial of leave. It is not clear why Brookins believes either fact constitutes evidence of pretext. The facts certainly do not suggest the "antagonistic attitude" found in Hofferica v. St. Mary Med. Ctr., 817 F. Supp. 2d 569, 585 (E.D. Pa. 2011), where the employer ignored weekly calls from the employee.

previous occasions when she requested and received FMLA leave from Staples. To the extent that Brookins claims Duncan particularly retaliated against her, the undisputed evidence shows Duncan has supervised two other team members on FMLA leave without apparent complaint. Brookins does not explain why Duncan would retaliate against her but not them.

Moreover, Brookins has "failed to produce evidence of the sort commonly used to show pretext." Colburn, 429 F.3d 325, 338 (1st Cir. 2005). She concedes that no one at Staples ever made any discriminatory remarks to her about her leave of absence or her medical condition. Likewise, she has presented no evidence that similarly situated employees (i.e., employees with a similar number of unexcused absences) were treated better than she was. Cf. id.[14]

Finally, it is undisputed that Duncan and Latimer were preparing to give Brookins her final attendance warning before they learned of her medical condition and before she requested FMLA leave. In other words, Staples' asserted reason for the termination was not invented post hoc. The evidence shows Staples was concerned about Brookins' absences well before she requested FMLA leave, and told her that she would be terminated after one more unexcused absence. She then took four more absences. As described above, none of those absences were protected by the FMLA. A rational factfinder, reviewing these facts, simply could not conclude from the evidence presented by Brookins that she was fired on a mere pretext.

---

[14] Staples argues that the failure to put forward any similarly situated employee who was treated better is by itself enough to doom Brookins' claim. Cf. Windross v. Barton Protective Servs, 586 F.3d 98, 104 (1st Cir. 2009) (applying Mass. Gen. Laws ch. 151B). I need not decide that question here; however, I note that standard would be impossible to meet if no similarly situated employee exists.

### C. State Law Claims

Brookins brings the third and fourth counts in her complaint under the Massachusetts antidiscrimination law, Mass. Gen. Laws ch. 151B. In her third count, she claims that Staples discriminated against her by (1) refusing to provide a requested accommodation for her medical condition; and (2) failing to engage in an interactive process to determine the feasibility of a reasonable accommodation. In her fourth count, she claims Staples discriminated against her on the basis of a perceived handicap.

These claims fail. First, the only accommodation that Brookins requested was FMLA leave; Staples cannot be liable for any other accommodation that Brookins did not request. See Russell v. Cooley Dickinson Hosp., 772 N.E.2d 1054, 1065-66 (Mass. 2002). And Staples accommodated Brookins' request for FMLA leave, telling her she could take that leave in accordance with standard FMLA procedures. Those procedures required Brookins to file a timely CHCP, which she did not do. Her failure to file a timely CHCP led to her FMLA leave being denied. Brookins cannot now complain that Staples denied her a reasonable accommodation just because she failed to take advantage of the FMLA leave that she requested and that Staples offered.[15]

 Second, the only argument Brookins presents to show that Staples failed to engage in an interactive process is that Staples failed to provide her with the forms it normally uses for reasonable accommodation requests. Given that Staples gave

---

[15] I therefore need not reach Staples' additional contention that Brookins was not a qualified handicapped person. See Mass. Gen. Laws ch. 151B, § 4(16) (prohibiting employment discrimination against qualified handicapped persons).

16

Brookins the correct forms for the only accommodation she requested—FMLA leave—this argument clearly lacks merit.

Brookins presents no argument supporting her fourth claim, for discrimination based on a perceived handicap; she only incorporates her previous arguments. For the same reasons given above, those arguments fail.

## IV.    Conclusion

Defendant's motion for summary judgment (Docket # 14) is ALLOWED. Judgment may enter accordingly.


\_\_\_\_\_February 12, 2013\_\_\_\_\_                          _____/s/Rya W. Zobel_____
            DATE                                                              RYA W. ZOBEL
                                                          UNITED STATES DISTRICT JUDGE